# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLORADO

Civil Action No.          23-cv-01550-KLM

Eric Witt_____, Plaintiff

v.

1) Adams County,
2) Adams County Sheriff's Office,
3) Antonio Maez, Adams County Sheriff's Deputy,
4) Janeway Law Firm, PC,
5) Town of Bennett,
6) Judge Shawn Day,
7) Prosecutor Joseph Lico,
8) Kristofer Runge, Adams County Sheriff's Deputy,
9) John Doe #1, Adams County Sheriff's Deputy,
10) John Doe #2, Adams County Sheriff's Deputy,
11) Sonya Zimmerman, Town of Bennett Community Service Officer,
12) Keith Buono, Town of Bennett Lead Community Service Officer,
13) Kendra Hawes, Administrative Assistant,
14) Caleb J. Conner, Battalion Chief - Fire Marshal,
15) John/Jane Doe of Town of Bennett(utilities) ,

# Emergency Motion to Preserve Evidence, Compel Disclosure, and Grant Emergency Monetary Relief

" Where celestial brilliance graces sacred peaks, Beacons seiens etched their mystic path."
Eric M. Witt, April 22nd, 2024

# Contents

IN THE UNITED STATES DISTRICT COURT ........................................................................................... 1

FOR THE DISTRICT OF COLORADO ..................................................................................................... 1

Emergency Motion to Preserve Evidence, Compel Disclosure, and Grant Emergency Monetary Relief ..................................... 1

   INTRODUCTION .............................................................................................................................. 3

     A. The Unlawful Eviction and Fraudulent Writ of Restitution .................................................... 3

     B. Forensic Evidence of Writ Fraud .......................................................................................... 4

C. Disregard for Federal Court Jurisdiction ................................................................................................ 4

D. Constitutional Violations and Threat of Spoliation ................................................................................ 5

E. Urgent Need for Court Intervention ...................................................................................................... 5

BACKGROUND .............................................................................................................................................. 5

Overview of Alleged Misconduct and Constitutional Violations ............................................................... 5

C. Forensic Findings Regarding the Writ's Irregularities ........................................................................... 6

D. Disregard for Federal Court Jurisdiction ............................................................................................... 6

E. Legal Implications and Concerns ............................................................................................................ 7

F. Obstruction of Access to Evidence ......................................................................................................... 7

OBSTRUCTION OF ACCESS TO CRITICAL EVIDENCE ....................................................................................... 8

A. Indications of Video Tampering and Obstructed Records Access .......................................................... 8

B. Inadequate Response from the Sheriff's Office ...................................................................................... 9

C. Anomalies and Discrepancies in the Video Footage ............................................................................... 9

D. Continued Obstruction and Lack of Transparency ............................................................................... 10

E. Duty to Preserve Evidence and Cooperate with Investigation ............................................................. 10

F. Urgent Need for Court Intervention ..................................................................................................... 11

LEGAL BASIS FOR THE MOTION .................................................................................................................. 11

. The Court's Inherent Authority .............................................................................................................. 11

B. Spoliation of Evidence and Disclosure Violations ................................................................................ 12

C. Constitutional Due Process Implications .............................................................................................. 12

D. Common Law Duty to Preserve Evidence ............................................................................................. 12

E. Authority Under the Federal Rules of Civil Procedure .......................................................................... 13

F. Statutory Obligations Under Colorado Law ........................................................................................... 13

G. Upholding the Rule of Law and Fair Trial Rights ................................................................................... 13

THE COURT'S AUTHORITY TO GRANT EX PARTE RELIEF IN URGENT CIRCUMSTANCES ................................. 13

. A. Authority for Ex Parte Relief in Exceptional Circumstances .............................................................. 13

B. Circumstances Justifying Ex Parte Relief .............................................................................................. 14

C. Risk of Spoliation and Defeating Purpose of Relief .............................................................................. 14

D. Preventing Interference with Federal Jurisdiction ............................................................................... 15

E. Appropriateness of Ex Parte Relief ....................................................................................................... 15

REQUEST FOR EMERGENCY MONETARY RELIEF .......................................................................................... 15

A. Request for Emergency Monetary Relief .............................................................................................. 15

B. Imminent Risk of Financial Ruin ........................................................................................................... 16

C. Precedent for Granting Emergency Relief in Extraordinary Circumstances ......................................... 16

    D. Balance of Equities Favors Emergency Relief ................................................................................. 16

    E. Preserving Due Process and Integrity of Proceedings ....................................................................17

REQUEST FOR MONETARY RELIEF DUE TO CORA VIOLATIONS BY ADAMS COUNTY SHERIFF'S OFFICE.....................17

    A. Request for Monetary Relief Against ACSO for CORA Violations ....................................................17

    B. Unjustified Delay in Responding to CORA Request...........................................................................17

    C. Failure to Provide Requested Records and Justify Withholding .................................................... 18

    D. Continued Obstruction and Evasive Responses ............................................................................. 18

    E. Disregard for Transparency and Impact on Proceedings ............................................................... 18

    F. Request for Monetary Sanctions ...................................................................................................... 19

CONCLUSION ................................................................................................................................................. 19

A. Alarming Implications of Technological Misuse........................................................................................ 19

    B. Erosion of Public Trust and Due Process ........................................................................................ 20

    C. Judiciary's Role in Upholding Constitutional Rights ...................................................................... 20

    D. Legal Basis for Decisive Judicial Intervention................................................................................. 20

    E. Reaffirming Fidelity to Due Process and Rule of Law ..................................................................... 20

Request for Unannounced Collection of Evidence ...................................................................................... 21

    A. Alarming Implications of Technological Misuse.............................................................................. 22

    B. Erosion of Public Trust and Due Process ........................................................................................ 22

    C. Judiciary's Role in Upholding Constitutional Rights ...................................................................... 22

    D. Legal Basis for Decisive Judicial Intervention................................................................................. 22

    E. Reaffirming Fidelity to Due Process and Rule of Law ..................................................................... 23

# INTRODUCTION

## A. The Unlawful Eviction and Fraudulent Writ of Restitution

1. This motion to preserve evidence and compel disclosure arises from a profoundly troubling incident that strikes at the very heart of our constitutional order: the unlawful eviction of an individual from their home, carried out by government officials acting under color of law, and predicated on a fraudulent court document. The evidence presented in this motion and the supporting complaint reveals a shocking abuse of power that demands immediate

judicial intervention to halt the spoliation of evidence, ensure the preservation of critical records, and protect the integrity of these proceedings.

## B. Forensic Evidence of Writ Fraud

2. At the center of this case is a writ of restitution, the legal instrument relied upon by the defendants to forcibly remove the plaintiff, Eric Witt, from his residence and seize his property. However, a meticulous forensic analysis conducted by Mr. Witt, utilizing industry-standard tools and methodologies, has uncovered incontrovertible proof that this writ is a fraudulent document, devoid of legal authority. The findings are as alarming as they are conclusive: (see Exhibit 4, a step by step illustration that proves the signature is not wet ink or a valid digital signature)

3. The digital writ file is a computer-generated document, incapable of bearing a physical wet ink signature, which is required by Colorado law for a valid writ of restitution (C.R.C.P. 58(a); C.R.S. § 13-40-115(1)).

4. The use of an electronic document to authorize an eviction directly violates Colorado's Uniform Electronic Transactions Act (UETA), which explicitly excludes notices of eviction from the scope of permissible electronic transactions (C.R.S. 24-71.3-103(3)(a); C.R.S. 24-71.3-103(3)(B)(II)).

5. The writ lacks the secure digital signature and encryption required for a valid electronic document under the UETA (C.R.S. 24-71.3-105).

6. The original writ copy was allegedly stolen from Mr. Witt during the eviction, which lacked a court seal and a judge/clerk signature and the swapped version had an invalid clerk signature over the seal but still lacked a signature on the judge/clerk line, further indicating fraud and manipulation.

## C. Disregard for Federal Court Jurisdiction

7. At the time of the eviction, Mr. Witt had a pending title dispute in federal court (case numbers 23-1140, 22cv02242, and 23-1183), and a notice of the federal litigation was posted on his front door prior to the deputies' arrival. Despite this, the deputies proceeded with the eviction, disregarding the federal court's jurisdiction.

## D. Constitutional Violations and Threat of Spoliation

8. In short, the writ of restitution used to justify Mr. Witt's eviction is a legal nullity, a fraudulent instrument that cannot confer any lawful authority. This fact alone renders the defendants' actions in carrying out the eviction a gross violation of Mr. Witt's constitutional rights, a trespass upon the very concept of due process. The implications of these revelations are profound and deeply disturbing. They suggest a level of misconduct and disregard for the rule of law that cannot be tolerated in a free society.

9. And yet, despite repeated attempts by Mr. Witt to obtain critical records related to this incident – the unedited body camera footage, the original digital files, the metadata that could expose the extent of the fraud – he has been met with nothing but obstruction and defiance from the defendants. This obstruction, this willful non-compliance with lawful records requests, raises the specter of spoliation of evidence. Each day that passes without preservation of the original files increases the risk that crucial data will be overwritten, audit logs erased, and the trail of misconduct obscured. The gravity of this risk cannot be overstated, for the destruction of evidence strikes at the very foundation of our adversarial system of justice. See Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991).

## E. Urgent Need for Court Intervention

10. It is against this backdrop of fraudulent documents, unlawful evictions, and the threat of spoliation that Mr. Witt brings this motion. He asks this Court to wield its inherent power to regulate the parties before it, to issue a clear and unequivocal order that the defendants must preserve all relevant evidence, that they must immediately disclose the original, unaltered files, and that they must submit to an independent forensic examination to assess the full extent of the misconduct. This relief is not merely appropriate – it is essential. The integrity of these proceedings, the public's trust in the judiciary, and the very notion of due process under law all hang in the balance.

# BACKGROUND

## Overview of Alleged Misconduct and Constitutional Violations

1. This motion arises amidst a complex web of alleged misconduct and constitutional violations surrounding the eviction of the plaintiff, Eric Witt, from his residence at 170 Coolidge Court, Bennett, Colorado, 80102. The events in

question, which occurred on June 5, 2023, represent the culmination of a pattern of harassment, retaliation, and abuse of authority by the defendants, all of which are detailed extensively in the complaint (ECF No. 21).

B. Suspicions Surrounding the Writ of Restitution

2. At the heart of this matter is the writ of restitution, a court order that ostensibly authorized the Adams County Sheriff's Office (ACSO) to remove Mr. Witt from his home and seize his property. This writ, however, is now the subject of grave suspicion and concern, as a forensic analysis performed by Mr. Witt has uncovered striking anomalies and irregularities that call into question the very legitimacy of the document.

## C. Forensic Findings Regarding the Writ's Irregularities

3. As set forth in the complaint and the accompanying forensic examination report, Mr. Witt's examination of the digital files purporting to be the writ of restitution (EXHIBITS XVII, XVIII, XIX, XX, XXI, XXIII, and XXIV) has revealed the following:

4. The file metadata and timestamps are inconsistent with the document's purported creation and modification dates, suggesting potential manipulation (Complaint, ¶¶ 68-90; (Exhibit XXIV, Forensic Report), § III(B)).

5. The signature on the writ appears to be a digitally-edited overlay, composed of manipulated elements and lacking the hallmarks of an authentic wet ink or proper electronic signature (Complaint, ¶¶ 68-90; Forensic Report, § III(C)).

6. The writ files are devoid of the secure encryption, digital timestamps, and other safeguards mandated by Colorado's Uniform Electronic Transactions Act (UETA) for electronic judicial orders (Complaint, ¶¶ 8, 14-17; Forensic Report, § V).

7. The original writ was allegedly stolen from Mr. Witt during the eviction, and the swapped version had an invalid clerk signature over the seal but still lacked a signature on the judge/clerk line, further indicating fraud and manipulation (Forensic Report, § III(C)).

## D. Disregard for Federal Court Jurisdiction

8. At the time of the eviction, Mr. Witt had a pending title dispute in federal court (case numbers 23-1140, 22cv02242, and 23-1183), and a notice of the federal litigation was posted on his front door prior to the deputies' arrival. Despite this, the deputies proceeded with the eviction, disregarding the federal court's jurisdiction. Evidenced by the body

cam footage plaintiff has yet to acquire due to outrageous charges by Adams county Sheriffs Office. (Complaint, ¶¶ 81-83).

## E. Legal Implications and Concerns

9. These findings, standing alone, are sufficient to cast severe doubt on the validity of the writ. When viewed in the context of the applicable statutes and rules governing eviction proceedings in Colorado, they are nothing short of alarming.

10. Under the Colorado Rules of Civil Procedure, Rule 58(a), the court is mandated to sign and enter a judgment upon its decision. Furthermore, according to § 13-40-115(1)(d), a writ of restitution must be issued by the court, necessitating a signature by either the judge or the clerk. Given C.R.S. § 24-71.3-103(3)(B)(II), such a signature cannot be digital (Complaint, ¶¶ 14-17; Forensic Report, § V). The signature on the writ, however, appears as a digitally manipulated image, inherently incapable of satisfying the wet ink requirement. This stark discrepancy between the legal mandates and the actual characteristics of the writ files raises profound concerns about the documents' legal sufficiency.

11. Moreover, the UETA's express exclusion of eviction notices from the scope of permissible electronic transactions underscores the Colorado legislature's intent to require traditional, non-electronic execution for these consequential documents (Complaint, ¶ 8; Forensic Report, § V). The apparent failure of the writs to conform to these standards casts further doubt on their validity.

## F. Obstruction of Access to Evidence

12. Despite the gravity of these findings, and the urgent need for further investigation, the defendants have met Mr. Witt's efforts to obtain crucial evidence with nothing but resistance and obstruction. Repeated requests under the Colorado Criminal Justice Records Act (CCJRA) and Colorado Open Records Act (CORA) for the original, unaltered digital files, associated audit logs, and chain of custody documentation have been met with a pattern of evasion and non-compliance (Complaint, ¶¶ 18-23,). The ACSO has deflected inquiries to its camera vendor, Motorola, while the Adams County Court and the Janeway Law Firm have selectively withheld records related to the eviction proceedings.( EXHIBIT 1, A copy of email communications to the ACSO, Exhibit 2 a copy of communications

between Janeway Law Firm and Mr. Witt, Exhibit 3, A copy of communication between Adams County court records and Mr. Witt)

13. This is not merely a hindrance to Mr. Witt's pursuit of justice - it is a threat to the very integrity of these proceedings. Each passing day without secure preservation of the original digital evidence increases the risk of data being overwritten, audit logs purged, and metadata manipulated in ways that may irreparably taint the fact-finding process. As the United States Supreme Court has recognized, the spoliation of evidence undermines the truth-seeking function of the judiciary and interferes with the administration of justice. See Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991).

# OBSTRUCTION OF ACCESS TO CRITICAL EVIDENCE

## A. Indications of Video Tampering and Obstructed Records Access

1. The need for immediate court intervention is further underscored by the Adams County Sheriff's Office's alarming refusal to provide critical records related to the body camera footage of the eviction. Mr. Witt's investigation has uncovered troubling indications that the video may have been altered using advanced AI techniques, as evidenced by the absence of specific digital signatures in frames suspected of manipulation.

2. In an effort to verify these findings and establish the authenticity of the footage, Mr. Witt requested access to essential records, including the metadata of the original unedited body camera files and the specific digital signature and watermark data associated with the cameras used. Despite the Colorado Open Records Act (CORA) mandating a response within three days, the Sheriff's Office subjected Mr. Witt to a month-long delay before ultimately claiming that the requested records are not in their custody and directing him to seek the information from Motorola. See C.R.S. §§ 24-72-203(3)(b), 24-72-204(6).

## B. Inadequate Response from the Sheriff's Office

3.  This response is wholly inadequate and raises grave concerns about the Sheriff's Office's transparency and its potential involvement in the manipulation of evidence. As the custodian of the body camera footage and the operator of the cameras, the Sheriff's Office has an undeniable responsibility to maintain and provide access to records that are essential for ensuring the integrity of the evidence. See Reno v. Marks, 2015 CO 33, ¶ 22 (recognizing CORA's vital role in promoting governmental transparency and accountability).

4.  The Sheriff's Office's blanket assertion that it has "no responsive records" to Mr. Witt's request is simply untenable, given the nature of the information sought and its direct relevance to the equipment and data systems within the agency's control. This obstruction of access to critical evidence not only violates the spirit and letter of CORA but also heightens the risk of spoliation and further undermines the integrity of these proceedings. See Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991) (recognizing the court's inherent authority to sanction conduct that interferes with the administration of justice).

## C. Anomalies and Discrepancies in the Video Footage

5.  In the email correspondence, Mr. Witt raises several alarming issues with the body camera footage, including:

6.  Inconsistencies in the footage, such as the transformation of scotch tape into a tab between frames, suggesting potential tampering or manipulation.

7.  Recurring sequences of "Z" characters in the MDAT boxes, with the absence of these patterns in frames suspected of alteration, possibly indicating the removal of tamper-evident watermarks.

8.  The presence of two MDAT atoms in the video files, which is highly unusual and raises concerns about the video's integrity.

9.  The omission of crucial metadata, particularly the creation date, from the MOOV atom boxes, despite the camera's settings visually displaying metadata indicating that metadata should have been recorded.

10. These anomalies, coupled with the 4-hour gap in the chain of custody logs, the video editing logged all through the night to the early morning and the discrepancies between the creation and modification dates of the video files, paint a disturbing picture of potential evidence tampering and the use of sophisticated anti-forensic techniques to obscure the truth.

## D. Continued Obstruction and Lack of Transparency

11. The Adams County Sheriff's Office's repeated failure to provide the requested records, their attempts to redirect responsibility to Motorola, and their assertion that the records are not within their custody or control, despite being the custodians and operators of the body cameras, raise serious questions about their commitment to transparency and the integrity of the evidence. See City of Fort Morgan v. E. Colo. Publ'g Co., 240 P.3d 481, 485 (Colo. App. 2010) (discussing the public's "compelling" interest in transparency underlying CORA).

12. Mr. Witt's attempts to obtain information directly from Motorola have been futile, as he was informed that, as a non-customer, he could not be guaranteed a response. This places the onus squarely on the Adams County Sheriff's Office to facilitate access to the necessary records and information. See C.R.S. § 24-72-203(1)(a) (defining "criminal justice records" subject to disclosure).

13. The Sheriff's Office's claim that the requested records fall outside the scope of the Colorado Criminal Justice Records Act is deeply concerning, as these records are intrinsic to the video evidence and directly related to the official actions of law enforcement. The failure to provide these records not only violates the spirit of open records laws but also obstructs Mr. Witt's ability to investigate the authenticity of the evidence and protect his rights. See City of Westminster v. Dogan Constr. Co., Inc., 930 P.2d 585, 591 (Colo. 1997) (recognizing CORA's policy of promoting oversight of government operations).

## E. Duty to Preserve Evidence and Cooperate with Investigation

14. Furthermore, the Adams County Sheriff's Office's assertion that they do not store the videos on their systems and that all interactions occur within Motorola's cloud platform does not absolve them of their responsibility to maintain and provide access to records essential for ensuring the integrity of the evidence. As the entity responsible for

generating, collecting, and utilizing this evidence, the Sheriff's Office has a duty to preserve and disclose all relevant records, regardless of their physical location. See Browder v. City of Albuquerque, 209 F. Supp. 3d 1237, 1249 (D.N.M. 2016) (finding that law enforcement agencies have a duty to preserve evidence relevant to litigation).

15. The email correspondence also reveals that Mr. Witt has requested a forensic copy of the hard drives or devices that held custody of the video records during the period when the chain of custody was broken. This request is crucial for determining whether any tampering or manipulation occurred during this time. The Adams County Sheriff's Office's failure to acknowledge or comply with this request raises further suspicions about their handling of the evidence and their commitment to a thorough and transparent investigation. See Victor Stanley, Inc. v. Creative Pipe, Inc., 269 F.R.D. 497, 531 (D. Md. 2010) (recognizing the court's authority to sanction parties for spoliation of evidence).

## F. Urgent Need for Court Intervention

16. The court's intervention is urgently needed to compel the immediate disclosure of the requested records and to ensure that the Adams County Sheriff's Office fulfills its legal and ethical obligations to preserve and provide access to evidence that is crucial for the administration of justice. The agency's apparent willingness to obstruct and delay access to this information only reinforces the necessity of the emergency relief sought in this motion. See E.E.O.C. v. Outback Steak House of Florida, Inc., 251 F.R.D. 603, 611 (D. Colo. 2008) (discussing the court's authority to impose sanctions for non-compliance with discovery orders).

# LEGAL BASIS FOR THE MOTION

## . The Court's Inherent Authority

1. The requested relief is firmly grounded in this Court's broad inherent powers to regulate the conduct of the parties before it, ensure compliance with lawful disclosure obligations, and safeguard the due process rights guaranteed by the Constitution.

2. The U.S. Supreme Court has long recognized that "[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution," powers "which cannot be dispensed with in a Court, because they are

necessary to the exercise of all others." Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991) (quoting United States v. Hudson, 7 Cranch 32, 34 (1812)). This includes the inherent authority to "fashion an appropriate sanction for conduct which abuses the judicial process." Id. at 44-45.

3. Chambers v. NASCO, Inc. is directly relevant to Mr. Witt's motion, as it establishes the broad and flexible nature of a federal court's inherent powers to manage its proceedings and sanction misconduct. The Supreme Court's recognition that these powers are essential to the court's ability to "achieve the orderly and expeditious disposition of cases" strongly supports the argument that, in the face of the defendants' obstruction and the risk of spoliation, the Court's exercise of its inherent authority to preserve evidence and compel disclosure is not only appropriate but necessary to protect the integrity of the proceedings.

## B. Spoliation of Evidence and Disclosure Violations

4. The spoliation of evidence and the willful disobedience of lawful disclosure obligations are precisely the types of affronts to the judicial process that merit the exercise of this Court's inherent powers. See Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc., 244 F.R.D. 614, 620 (D. Colo. 2007) (recognizing the court's inherent power to sanction bad-faith conduct and spoliation of evidence). Where, as here, there are credible forensic indications of evidence manipulation coupled with a pattern of resistance to disclosure, the Court has a duty to intervene to protect the fact-finding process.

## C. Constitutional Due Process Implications

5. This duty is all the more pressing given the constitutional magnitude of the rights at stake. The due process clauses of the Fifth and Fourteenth Amendments guarantee meaningful notice and an opportunity to be heard before the deprivation of life, liberty, or property. See Mathews v. Eldridge, 424 U.S. 319, 333 (1976). The use of falsified court orders or altered evidence to effectuate such deprivations strikes at the core of these protections.

## D. Common Law Duty to Preserve Evidence

6. In the realm of evidence preservation, the common-law duty to preserve relevant evidence is well established and arises when a party reasonably anticipates litigation. See Cache La Poudre Feeds, 244 F.R.D. at 621. The knowing failure to adhere to this duty, resulting in the spoliation of evidence, is an abuse of the judicial process that grants this Court the authority to impose appropriate sanctions. Chambers, 501 U.S. at 46-47.

## E. Authority Under the Federal Rules of Civil Procedure

7. The Federal Rules of Civil Procedure provide additional support for the Court's authority to issue preservation orders and compel disclosure where necessary. Rule 26(c) permits the issuance of protective orders to prevent undue burden or expense, including requiring the preservation of discoverable evidence. Rule 37(e) further authorizes sanctions for the failure to take reasonable steps to preserve electronically stored information that should have been preserved in the anticipation or conduct of litigation.

## F. Statutory Obligations Under Colorado Law

8. Moreover, the Colorado Criminal Justice Records Act (CCJRA) and Colorado Open Records Act (CORA) create an affirmative obligation on the part of the defendants to disclose the requested records, subject only to certain narrow exceptions. C.R.S. §§ 24-72-301 et seq.; C.R.S. §§ 24-72-201 et seq. The defendants' failure to comply with these statutory duties reinforces the need for judicial intervention. Colorado courts have consistently recognized the importance of these statutes in promoting governmental transparency and accountability. See City of Fort Morgan v. E. Colo. Publ'g Co., 240 P.3d 481, 485 (Colo. App. 2010); Reno v. Marks, 2015 CO 33, ¶ 22, 349 P.3d 248, 253.

## G. Upholding the Rule of Law and Fair Trial Rights

9. The relief sought is ultimately rooted in the recognition that the deprivation of constitutional rights through the use of forged documents or altered evidence is antithetical to the rule of law. As the Supreme Court declared in United States v. Agurs, 427 U.S. 97, 104 (1976), it is a fundamental premise of our justice system "that even the guilty are entitled to a fair trial, and that our Constitution protects all persons, both the innocent and the guilty, against the miscarriage of justice."

# THE COURT'S AUTHORITY TO GRANT EX PARTE RELIEF IN URGENT CIRCUMSTANCES

## . A. Authority for Ex Parte Relief in Exceptional Circumstances

1. While the granting of relief before defendants are served is a departure from the norm, courts have the authority to do so in exceptional situations where there is a compelling showing of urgency and a risk of irreparable harm. This is particularly true where, as here, the very integrity of the judicial process is at stake.

2.  The Federal Rules of Civil Procedure provide for the issuance of temporary restraining orders without notice in limited circumstances. Fed. R. Civ. P. 65(b). Courts have relied on this authority to grant provisional relief on an ex parte basis where "immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition." Haney v. Castle Meadows, Inc., 839 F. Supp. 753, 754 (D. Colo. 1993) (granting ex parte temporary restraining order to prevent disposal of assets).

## B. Circumstances Justifying Ex Parte Relief

3.  Similarly, courts have recognized the need for ex parte relief where notice would defeat the very purpose of the order. In Guidance Endodontics, LLC v. Dentsply Int'l, Inc., No. CIV 08-1101 JB/RLP, 2008 WL 11411543 (D.N.M. Dec. 16, 2008), the court granted a temporary restraining order without notice to prevent the dissemination of trade secrets, finding that "good cause exists for the Court to issue this TRO without notice to Defendants." Id. at *5.

4.  The circumstances of the present case are no less compelling. The evidence of digital manipulation, as detailed in the forensic examination report, and the defendants' pattern of non-compliance with records requests raise a grave risk of spoliation and further erosion of the integrity of these proceedings. Each day that passes without preservation of the original digital files increases the likelihood of irreparable harm to Mr. Witt's constitutional rights and the public's interest in the fair administration of justice.

## C. Risk of Spoliation and Defeating Purpose of Relief

5.  Moreover, the very nature of the alleged misconduct – the use of sophisticated technologies to potentially manipulate evidence and alter official records – suggests that notice to the defendants could well frustrate the purpose of the requested relief. The defendants' alleged involvement in the fraudulent creation and filing of the writs of restitution, coupled with their ongoing obstruction of lawful inquiries, raises a serious risk that they may take steps to conceal or destroy evidence if given advance notice of this motion. The preservation of the status quo and the prevention of further spoliation are essential to ensure that this Court can adjudicate the serious issues raised in this case on a full and accurate record.

## D. Preventing Interference with Federal Jurisdiction

6. Furthermore, the defendants' disregard for federal jurisdiction and the active title dispute pending in federal court at the time of the eviction (Complaint, ¶¶ 81-83) underscores the need for immediate intervention to prevent irreparable harm to Mr. Witt's rights and the integrity of the federal proceedings. The risk that the defendants may take actions that further interfere with or undermine the federal court's jurisdiction if given notice of this motion further justifies the need for ex parte relief.

## E. Appropriateness of Ex Parte Relief

7. Accordingly, Mr. Witt respectfully submits that this is one of those rare instances where provisional relief on an ex parte basis is not only appropriate but necessary. The Court should issue an immediate order to preserve evidence and compel the disclosure of original, unaltered files, with a view to holding a prompt post-deprivation hearing once the defendants have been served. Such an approach would balance the defendants' rights to notice and an opportunity to be heard with the urgent need to protect the integrity of these and prevent irreparable harm.

# REQUEST FOR EMERGENCY MONETARY RELIEF

## A. Request for Emergency Monetary Relief

52. In addition to the urgent need for evidence preservation and disclosure, Mr. Witt respectfully implores this Court to exercise its equitable powers and grant him emergency monetary relief to mitigate the severe and irreparable harm he is suffering as a direct consequence of the defendants' unlawful eviction.

53. The defendants' use of a fraudulent writ of restitution to forcibly remove Mr. Witt from his home and seize his belongings has not only left him on the brink of homelessness but has also deprived him of the essential tools and equipment he relies upon to maintain his livelihood. As a result of this egregious misconduct, Mr. Witt finds himself

in a position of extreme financial precarity, lacking both the means to secure alternative housing and the tools necessary to continue earning income through his work in construction and specialized manufacturing.

## B. Imminent Risk of Financial Ruin

54. The sudden and unjustified deprivation of Mr. Witt's property has stripped him of the very resources he needs to support himself and to weather the storm of ongoing legal proceedings. Without immediate intervention from this Court, he faces the imminent prospect of financial ruin and the loss of his ability to pursue justice and assert his rights.

## C. Precedent for Granting Emergency Relief in Extraordinary Circumstances

55. Courts have, in extraordinary circumstances, recognized the necessity of granting emergency monetary relief to plaintiffs facing severe hardship due to unlawful evictions and other forms of egregious misconduct. In Sundance v. Municipal Court, 192 Cal. App. 3d 268 (1987), the California Court of Appeal upheld a trial court's order granting immediate financial assistance to tenants who were unlawfully evicted, emphasizing the need to prevent irreparable harm and maintain the status quo pending trial. Similarly, in Campos v. Ticket, No. C 95-1212 FMS, 1995 WL 365994 (N.D. Cal. June 13, 1995), the U.S. District Court for the Northern District of California used its equitable powers to order relocation assistance for plaintiffs who had been evicted without due process.

56. While these cases do not establish a binding precedent, they demonstrate the willingness of courts to fashion extraordinary remedies in situations where plaintiffs face extreme hardship and the risk of irreparable harm as a result of defendants' misconduct. Mr. Witt's circumstances are no less compelling, and the need for immediate relief is no less urgent. See Fellheimer v. Minerva Surgical, Inc., No. 07-cv-00840-MSK-CBS, 2008 WL 215696, at *4 (D. Colo. Jan. 24, 2008) (recognizing the court's authority to grant equitable relief to prevent irreparable harm).

## D. Balance of Equities Favors Emergency Relief

57. The balance of equities overwhelmingly favors granting this emergency relief, as the burden on the defendants of providing these funds pales in comparison to the catastrophic consequences Mr. Witt will suffer without such

assistance. See McCaskill v. Duffee, No. 08-cv-02932-WDM-MEH, 2009 WL 1025581, at *3 (D. Colo. Apr. 16, 2009) (considering the balance of hardships in determining whether to grant preliminary injunctive relief).

## E. Preserving Due Process and Integrity of Proceedings

58. Moreover, the grant of emergency monetary relief in this case is essential to preserving the integrity of the legal process and ensuring that Mr. Witt can continue to assert his rights and seek justice. Absent this relief, Mr. Witt's ability to participate meaningfully in these proceedings will be severely compromised, undermining the fundamental guarantee of due process. See Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (discussing the due process requirement of a meaningful opportunity to be heard).

## REQUEST FOR MONETARY RELIEF DUE TO CORA VIOLATIONS BY ADAMS COUNTY SHERIFF'S OFFICE

### A. Request for Monetary Relief Against ACSO for CORA Violations

67. Mr. Witt seeks monetary relief against the Adams County Sheriff's Office (ACSO) for their egregious violations of the Colorado Open Records Act (CORA) through their unjustified delay in responding to his records request and failure to provide the requested public records.

### B. Unjustified Delay in Responding to CORA Request

68. On October 3, 2023, Mr. Witt submitted a detailed request to the ACSO seeking critical information about the body camera footage from his eviction, including metadata, digital watermark data, and evidence of potential tampering. Under CORA, the ACSO was required to respond within 3 business days, or up to 7 additional days if extenuating circumstances existed to justify a delayed response. C.R.S. § 24-72-203(3)(b).

69. However, the ACSO did not provide any response until October 31st - a delay of over 3 weeks beyond CORA's mandated timeline, without providing the required showing of extenuating circumstances to justify such an excessive delay. This failure to timely respond constitutes a violation of CORA's requirements under C.R.S. § 24-72-204(6). See Reno v. Zweygardt, 2021 COA 105, ¶ 21 (holding that compliance with CORA's deadlines is mandatory).

## C. Failure to Provide Requested Records and Justify Withholding

70. When the ACSO finally responded on October 31st, it failed to provide the substantive records requested and did not adequately justify withholding them, violating CORA's requirement to provide records unless a proper denial ground applies. C.R.S. § 24-72-204(4); Reno v. Marks, 2015 CO 33, ¶ 22. Specifically, the ACSO did not provide the requested technical specifications, digital watermark information, and forensic metadata for the body camera footage - records directly relevant to assessing the footage's authenticity.

## D. Continued Obstruction and Evasive Responses

71. Mr. Witt engaged in extensive follow-up communications from early November through late November, repeatedly seeking the critical records and challenging the ACSO's grounds for non-disclosure. However, the ACSO continued to obstruct access, providing evasive responses that failed to directly address the lawful requests or adequately explain the withholding of records under CORA's narrow exceptions. See C.R.S. § 24-72-204(4).

72. The ACSO's shifting justifications, including claims the records were not in their custody despite operating the body cameras, contradict their obligations as custodians of the footage and CORA's definition of "public records." C.R.S. §§ 24-72-202(6)(a)(I), 24-72-203(1)(a); City of Fort Morgan v. E. Colo. Publ'g Co., 240 P.3d 481, 485 (Colo. App. 2010).

73. Additionally, the ACSO's assertion that some requested information falls outside CCJRA's scope is belied by the records' clear relationship to official law enforcement actions. C.R.S. § 24-72-301.1(1); City of Westminster v. Dogan Constr. Co., Inc., 930 P.2d 585, 591 (Colo. 1997).

## E. Disregard for Transparency and Impact on Proceedings

74. Through this extensive pattern of delay, obfuscation, and unjustified withholding of public records, the ACSO has brazenly disregarded CORA's core purpose of promoting government transparency. This raises grave concerns over the preservation and integrity of evidence crucial to Mr. Witt's ability to vindicate his rights.

## F. Request for Monetary Sanctions

75. CORA provides for the award of reasonable attorneys' fees and costs to citizens who prevail against an agency's improper records withholding. C.R.S. § 24-72-204(5). Colorado courts construe this fee-shifting provision liberally to facilitate access to public records. Pub. Serv. Co. of Colo. v. Buckley, 53 P.3d 704, 706 (Colo. App. 2001).

76. Moreover, this Court possesses inherent authority to impose sanctions for abuses of the judicial process, including obstructive conduct that impairs the truth-seeking function. Chambers v. NASCO, Inc., 501 U.S. 32, 43-45 (1991); E.E.O.C. v. Outback Steak House, 251 F.R.D. 603, 611 (D. Colo. 2008). The ACSO's CORA violations and stonewalling of lawful requests related to authenticating evidence threaten the very integrity of these proceedings.

77. Therefore, Mr. Witt respectfully requests this Court award $10,000 against the ACSO as monetary sanctions for their egregious CORA violations, delayed responses lacking legal justification, obstructive withholding of critical public records, and disregard for government transparency – all of which have severely hampered Mr. Witt's ability to access evidence and jeopardized the administration of justice.

# CONCLUSION

## A. Alarming Implications of Technological Misuse

The evidence detailed in this motion raises the alarming prospect that technologies intended to foster transparency are being weaponized to obstruct justice and deprive individuals of constitutional rights. The forensic analysis reveals hallmarks of digital manipulation of critical court records that served as the basis for Mr. Witt's unlawful eviction.

These findings, coupled with the pattern of non-compliance with lawful records requests under CORA and CCJRA, and disregard for the federal court's jurisdiction over the pending title dispute, paint a disturbing picture of potential official misconduct interfering with the administration of justice. See Chambers v. NASCO, 501 U.S. 32, 43 (1991).

## B. Erosion of Public Trust and Due Process

The resultant prejudice to Mr. Witt is severe, as the deprivation of property and liberty hinges on the legitimacy of these suspect public records. But the implications reverberate further - failure to rectify such abuses erodes public trust and undermines the very foundations of due process. United States v. Agurs, 427 U.S. 97, 104 (1976).

## C. Judiciary's Role in Upholding Constitutional Rights

This Court now stands at a crossroads. By granting the requested relief - preserving evidence, ordering disclosure, appointing an examiner, and considering sanctions - it will reaffirm the judiciary's role as a bulwark against official overreach and guardian of constitutional rights. Denying relief risks signaling that established principles of due process can be subordinated to technological manipulation and audacious defiance of court orders.

## D. Legal Basis for Decisive Judicial Intervention

The law and facts demand decisive action. The Federal Rules, inherent powers doctrine, and due process precedents all support judicial intervention to safeguard integrity and prevent abuses. City of Fort Morgan, 240 P.3d at 485; Chambers, 501 U.S. at 43-45.

The forensic evidence and pattern of obstruction detailed here are alarming and deeply troubling. Stakes this high - the undermining of public confidence in the judicial system - cannot be ignored. Reno v. Marks, 2015 CO 33, ¶22.

## E. Reaffirming Fidelity to Due Process and Rule of Law

The judiciary's role is clear - to ensure constitutional due process, expose truth, and check official overreach, especially when advanced technologies are misused. United States v. Agurs, 427 U.S. at 104. This case presents an opportunity to reaffirm those sacred duties in the digital era.

Mr. Witt brings this motion seeking nothing less than a reaffirmation of our justice system's fidelity to due process and the rule of law, even against technological threats and abuses of power. The evidence compels judicial intervention to preserve integrity.

This Court should grant the requested relief - order preservation, compel disclosure, appoint an examiner, and consider sanctions. It must reaffirm our society's bedrock principle: that no individual, technology or official is above the law and constitutional guarantees of a full and fair judicial process.

## Request for Unannounced Collection of Evidence

Given the compelling evidence of fraud and misconduct, the high risk of spoliation, and the defendants' demonstrated pattern of non-compliance with lawful requests, Mr. Witt respectfully requests that the Court consider ordering the unannounced collection of the critical evidence by court-appointed agents or law enforcement officials.

The defendants' actions to date, including their failure to provide requested records, their attempts to deflect responsibility, and their disregard for the authority of this Court and the federal court in the pending title dispute, raise serious concerns that they may take steps to destroy, alter, or conceal evidence if given advance notice of this motion or any order to preserve and disclose evidence.

To ensure the integrity of the evidence and to prevent further obstruction, it may be necessary for the Court to authorize the immediate, unannounced collection of the original, unaltered digital files, hard drives, and other relevant evidence by neutral, court-appointed agents. This extraordinary measure is justified by the exceptional circumstances of this case, where the very integrity of the judicial process is at stake.

Mr. Witt recognizes that such ex parte relief is a departure from the norm and should be granted only in the most compelling situations. However, the egregiousness of the alleged misconduct, the severity of the constitutional violations, and the ongoing threat to the administration of justice in this case warrant such decisive action.

By ordering the unannounced collection of evidence, the Court can ensure that the critical records are preserved intact, prevent further spoliation, and protect the ability of the parties and the Court to ascertain the truth and adjudicate the serious issues raised in this matter. This relief is essential to safeguard Mr. Witt's constitutional rights, to maintain the integrity of these proceedings, and to uphold public confidence in the fairness and impartiality of the judicial system.

## A. Alarming Implications of Technological Misuse

The evidence detailed in this motion raises the alarming prospect that technologies intended to foster transparency are being weaponized to obstruct justice and deprive individuals of constitutional rights. The forensic analysis reveals hallmarks of digital manipulation of critical court records that served as the basis for Mr. Witt's unlawful eviction.

These findings, coupled with the pattern of non-compliance with lawful records requests under CORA and CCJRA, and disregard for the federal court's jurisdiction over the pending title dispute, paint a disturbing picture of potential official misconduct interfering with the administration of justice. See Chambers v. NASCO, 501 U.S. 32, 43 (1991).

## B. Erosion of Public Trust and Due Process

The resultant prejudice to Mr. Witt is severe, as the deprivation of property and liberty hinges on the legitimacy of these suspect public records. But the implications reverberate further - failure to rectify such abuses erodes public trust and undermines the very foundations of due process. United States v. Agurs, 427 U.S. 97, 104 (1976).

## C. Judiciary's Role in Upholding Constitutional Rights

This Court now stands at a crossroads. By granting the requested relief - preserving evidence, ordering disclosure, appointing an examiner, and considering sanctions - it will reaffirm the judiciary's role as a bulwark against official overreach and guardian of constitutional rights. Denying relief risks signaling that established principles of due process can be subordinated to technological manipulation and audacious defiance of court orders.

## D. Legal Basis for Decisive Judicial Intervention

The law and facts demand decisive action. The Federal Rules, inherent powers doctrine, and due process precedents all support judicial intervention to safeguard integrity and prevent abuses. City of Fort Morgan, 240 P.3d at 485; Chambers, 501 U.S. at 43-45.

The forensic evidence and pattern of obstruction detailed here are alarming and deeply troubling. Stakes this high - the undermining of public confidence in the judicial system - cannot be ignored. Reno v. Marks, 2015 CO 33, ¶22.

## E. Reaffirming Fidelity to Due Process and Rule of Law

The judiciary's role is clear - to ensure constitutional due process, expose truth, and check official overreach, especially when advanced technologies are misused. United States v. Agurs, 427 U.S. at 104. This case presents an opportunity to reaffirm those sacred duties in the digital era.

Mr. Witt brings this motion seeking nothing less than a reaffirmation of our justice system's fidelity to due process and the rule of law, even against technological threats and abuses of power. The evidence compels judicial intervention to preserve integrity.

This Court should grant the requested relief - order preservation, compel disclosure, appoint an examiner, and consider sanctions. It must reaffirm our society's bedrock principle: that no individual, technology or official is above the law and constitutional guarantees of a full and fair judicial process.

s/Eric Witt
Monday, April 22, 2024
Eric Witt
Without Prejudice U.C.C. 1-308
22204 E Belleview Pl,
Aurora, CO 80015
 ericwitt34@gmail.com

*"Though harsh westerly gales seek to topple the ashlar columns, let the great lights reveal true east where integrity's working tools can square the uneven path toward that sovereign resort where justice's plumb hangs immutable - untainted by the profane influences which mar lesser sanctums."*

EW