UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-01550-CNS-NRN

**ERIC WITT,** *Plaintiff,*

v.

**TOWN OF BENNETT and CALEB J. CONNOR,** *Defendants.*

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS**

Plaintiff Eric Witt, appearing pro se, hereby submits this response in opposition to Defendant Town of Bennett's Motion to Dismiss [ECF No. 43] and Defendant Caleb J. Connor's Motion to Dismiss [ECF No. 47]. For the reasons set forth below, both motions must be denied.

**I. INTRODUCTION**

This case exposes a flagrant violation of Fourth Amendment protections when Defendants unlawfully entered my property without a warrant on May 9, 2022, dismantled my fence, and seized my dog Willow. The Town of Bennett seeks dismissal by claiming Bennett-Watkins Fire Rescue is a wholly separate entity—a factual assertion that requires discovery to properly evaluate. Meanwhile, Defendant Connor invokes "exigent circumstances" to justify his warrantless invasion of private property while simultaneously claiming qualified immunity shields him from accountability. Both arguments collapse when subjected to proper constitutional scrutiny and cannot be resolved at this preliminary stage where all well-pleaded allegations must be accepted as true.

**II. FACTUAL BACKGROUND**

On May 9, 2022, personnel from Bennett-Watkins Fire Rescue, operating within the Town of Bennett's jurisdiction and under the town's administrative umbrella, entered my property at 170 Coolidge Court without a warrant or consent. Battalion Chief Connor, acting with the implicit authority of the Town of Bennett, dismantled my fence and seized my dog Willow.

The Town of Bennett cannot credibly claim complete separation from these actions. Their fire rescue personnel used town resources, operated within town boundaries, and executed an action that directly impacted a town resident. The subsequent obstruction of my Open Records Act requests further demonstrates the Town's coordinated approach to concealing the circumstances of this incident.

The day following the unlawful entry, I discovered Willow at Adams County Animal Shelter in severe distress, contradicting initial assurances about her condition. I was compelled to spend over $5,000 on medical treatments after the shelter suggested euthanasia—a direct consequence of the Town of Bennett's personnel's actions.

Despite multiple formal requests under the Colorado Open Records Act, the Bennett Fire Department—an extension of municipal services—has systematically blocked my attempts to obtain ADCOM radio transcripts. This deliberate obstruction suggests these records would fundamentally undermine the official narrative crafted by the Town of Bennett and its fire rescue personnel.

### III. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) should be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to

relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The Court must accept all well-pleaded allegations as true and construe them in the light most favorable to the plaintiff. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This Court must construe my pleadings liberally because I am proceeding pro se. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). As the Supreme Court has emphasized, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

## IV. ARGUMENT

### A. Town of Bennett's Motion to Dismiss Must Be Denied

### 1. Whether Bennett-Watkins Fire Rescue Acts Under Town Authority Is a Factual Question Requiring Discovery

The Town's motion to dismiss hinges entirely on its assertion that Bennett-Watkins Fire Rescue operates as a completely separate governmental entity. This claim cannot be resolved at the motion to dismiss stage for three critical reasons:

First, my complaint specifically alleges that Bennett-Watkins Fire Rescue personnel were "acting under the authority of the Town of Bennett" [ECF No. 21, p. 13, ¶ 19]. This is not a legal conclusion but a factual allegation that must be accepted as true at this stage. The Supreme Court has repeatedly held that "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Second, the relationship between a municipality and a special district is inherently a complex factual matter that demands discovery, not dismissal. Whether through formal agreements, funding structures, operational protocols, or delegated authority, municipalities often maintain substantial control over nominally "separate" entities operating within their boundaries. These relationships cannot be determined from the pleadings alone.

Third, Colorado law recognizes that municipalities may be liable for the actions of entities performing municipal functions within their boundaries, even if technically separate. See *Freeman v. City of Santa Fe*, 30 P.3d 1044 (N.M. Ct. App. 2001) (discussing similar principles); *Monell v. Department of Social Services*, 436 U.S. 658 (1978) (discussing municipal liability for the actions of those carrying out municipal policies or customs).

The Town's attempt to secure dismissal before any discovery can reveal the true nature of its relationship with Bennett-Watkins Fire Rescue demonstrates precisely why this case must proceed to the discovery phase.

## 2. Plaintiff Has Sufficiently Alleged Monell Liability

Even if Bennett-Watkins Fire Rescue is a separate entity, I have sufficiently alleged a plausible Monell claim against the Town. My Second Amended Complaint describes systematic constitutional violations involving multiple Town officials and departments, suggesting a custom or practice of disregarding constitutional rights.

The Supreme Court in *Monell* established that a local government may be sued under § 1983 when "the action that is alleged to be unconstitutional implements or executes a

policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or where the constitutional deprivation occurred pursuant to a "governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." 436 U.S. at 690-91.

The Town's participation in and approval of this conduct, and its coordinated refusal to address my complaints or provide critical records, plausibly suggests a municipal policy or custom that caused the violation of my rights. At the motion to dismiss stage, courts do not require detailed factual allegations establishing every element of municipal liability - that is what discovery is designed to develop. See *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168-69 (1993).

**B. Defendant Connor's Motion to Dismiss Must Be Denied**

**1. Claimed "Exigent Circumstances" Present Disputed Factual Questions That Cannot Be Resolved Without Discovery**

Connor's claim that exigent circumstances justified his warrantless entry relies on a series of disputed factual assertions that cannot possibly be resolved at the motion to dismiss stage:

First, I directly dispute Connor's account that there was an emergency requiring immediate entry. His own narrative contradicts the claim of urgent necessity—he states he was "flagged down" by a "panicked" adult male, yet had time to notify dispatch and wait for law enforcement to arrive. As the Supreme Court emphasized in *Kentucky v. King*, 563 U.S. 452, 470 (2011), the exigent circumstances exception applies only in "emergency situations"

requiring "prompt" action. The fact that Connor had time to summon additional personnel undermines the claim of exigency.

Second, Connor offers no documentation of the alleged witnesses and their statements. The lack of verification of these alleged reports directly implicates his claim of exigent circumstances. As the Tenth Circuit has held, officers need "reasonable grounds to believe that there is immediate need to protect their lives or others or their property or that of others" for the exigent circumstances exception to apply. *United States v. Najar*, 451 F.3d 710, 718 (10th Cir. 2006).

Third, the most damning contradiction in Connor's exigent circumstances claim comes from what happened after the seizure. Connor claims my dog was injured and bleeding so severely that immediate entry was necessary, yet when I discovered her the next day at Adams County Animal Shelter, she had received minimal medical care despite these supposedly urgent injuries. This fundamental inconsistency cannot be reconciled with a genuine emergency justifying a warrantless entry.

Fourth, and most significantly, I have been systematically denied access to the ADCOM radio transcripts that would reveal the actual communications during this incident, including the claimed emergency nature of the call and response. These transcripts would likely contradict Connor's after-the-fact characterization of events.

These factual disputes make dismissal inappropriate at this stage of proceedings. As the Supreme Court has held, "the issue of whether exigent circumstances existed is a question of fact." *Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002). Such factual

questions cannot be resolved on a motion to dismiss where all allegations must be construed in my favor.

## 2. Qualified Immunity Does Not Apply When Officers Violate Clearly Established Fourth Amendment Protections

Connor's qualified immunity argument fails because the law regarding warrantless entry onto private property was clearly established at the time of this incident. The Supreme Court has repeatedly held that "the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Payton v. New York*, 445 U.S. 573, 585 (1980). This protection extends to the curtilage of the home, including yards and outbuildings. *United States v. Dunn*, 480 U.S. 294, 301 (1987).

The clearly established law at the time of this incident provided that "searches and seizures inside a home without a warrant are presumptively unreasonable." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). While Connor cites cases suggesting warrantless entry may be justified to rescue animals in certain circumstances, those cases involved clear evidence of animal cruelty or imminent death—not unverified reports that could have been addressed through proper channels.

The Tenth Circuit has directly addressed similar circumstances in *DiCesare v. Stuart*, 12 F.3d 473 (10th Cir. 1993), establishing that an officer must have reliable information about animals in imminent danger before conducting a warrantless entry. That court refused to recognize a blanket "animal emergency" exception to the warrant requirement, particularly without verified information about imminent harm.

Any reasonable officer would have known that entering my property, dismantling my fence, and seizing my dog based on an unverified report violated clearly established law. The Supreme Court has emphasized that qualified immunity is not appropriate where "the unlawfulness of the officer's conduct [is] 'clearly established' at the time of the incident." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018).

Furthermore, the alleged government interest in seizing my dog is contradicted by the failure to provide her with immediate medical care after seizure, suggesting the emergency was not as claimed. As the Supreme Court held in *Michigan v. Tyler*, 436 U.S. 499, 509 (1978), "a warrantless entry by criminal law enforcement officials may be legal when there is compelling need for official action and no time to secure a warrant."

**3. Municipal Liability Claims Are Properly Alleged and Require Discovery**

Connor's argument that I failed to allege adequate facts for a Monell claim ignores the totality of my allegations. My Second Amended Complaint describes multiple instances of misconduct by Bennett-Watkins Fire Rescue personnel, including the improper entry and seizure, the failure to provide proper care to my dog, and the subsequent stonewalling of my legitimate records requests. These allegations plausibly suggest a pattern of conduct reflecting policy or custom, or at minimum, deliberate indifference in training and supervision.

The Supreme Court has emphasized that Monell claims are not subject to a heightened pleading standard. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination*

*Unit*, 507 U.S. 163, 168 (1993). At this stage, I need only allege facts that "plausibly suggest an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).

## V. THE SYSTEMIC WITHHOLDING OF CRITICAL EVIDENCE DEMANDS DISCOVERY

A critical aspect of this case is the defendants' calculated and persistent refusal to provide the ADCOM radio transcripts and other documentation about this incident. As detailed in my complaint [ECF No. 21, p. 13], I have been repeatedly obstructed from receiving these records by the Bennett Fire Department.

This deliberate withholding of evidence strongly suggests that the transcripts would demolish the defendants' narrative. The transcripts would likely reveal:

1. The actual nature of the initial call and whether it truly constituted an emergency
2. The timeline of events, including how long responders waited before entering my property
3. Whether attempts were made to contact me before the warrantless entry
4. Communications regarding the alleged condition of my dog and the purported need for emergency intervention

Courts have recognized that "where facts are peculiarly within the possession and control of the defendant, or where the necessary information is exclusively within the control of the defendant," dismissal is particularly inappropriate before discovery. *DiMare v. MetLife Ins. Co.*, 369 F. App'x 324, 329 (3d Cir. 2010).

The Court should not reward this obstructive behavior by dismissing my claims before I have had the opportunity to obtain this evidence through discovery. Doing so would create a perverse incentive for government entities to withhold evidence that would establish constitutional violations.

## VI. CONCLUSION

For the foregoing reasons, this Court must deny both Defendants' Motions to Dismiss. The factual disputes regarding the Town's relationship with Bennett-Watkins Fire Rescue, the existence of exigent circumstances, and the validity of the qualified immunity defense cannot be resolved at this stage. These are precisely the types of factual issues that require discovery.

Allowing this case to proceed to discovery will permit the factual discrepancies to be resolved through the production of withheld evidence and sworn testimony. Only then can the full extent of the defendants' conduct be brought to light and properly evaluated under the Fourth Amendment's protections.

I therefore respectfully request that the Court:

1. Deny the Town of Bennett's Motion to Dismiss;

2. Deny Defendant Connor's Motion to Dismiss;

3. Order expedited discovery specifically targeting the ADCOM radio transcripts and any records related to the May 9, 2022 incident; and

4. Grant any other relief the Court deems just and proper.

Respectfully submitted,

Eric Witt

22204 E Belleview Pl

Aurora, CO 80015

Tel: (720) 791-9889

Email: ericwitt34@gmail.com

Pro Se Plaintiff

---

**CERTIFICATE OF SERVICE**

I hereby certify that on March 18, 2025, I electronically filed the foregoing PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Nicholas C. Poppe

NATHAN DUMM & MAYER P.C.

7900 E. Union Avenue, Suite 600

Denver, CO 80237-2776

Attorney for Town of Bennett

Peter C. Middleton

Jordan M. Brickman

HALL & EVANS LLC

1001 17th Street, Suite 300

Denver, CO 80202

Attorneys for Defendant Caleb J. Connor

Eric Witt

Pro Se Plaintiff