# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-01550-CNS-NRN

**ERIC WITT,**
Plaintiff,

v.

**TOWN OF BENNETT and CALEB J. CONNOR,**
Defendants.

**EMERGENCY MOTION FOR RECONSIDERATION UNDER RULE 54(b) BASED ON CLEAR LEGAL ERROR AND MANIFEST INJUSTICE**

I, Eric Witt, pro se Plaintiff, respectfully submit this Emergency Motion for Reconsideration under Federal Rule of Civil Procedure 54(b), requesting that the Court reconsider and vacate Judge Babcock's order [ECF No. 36] dismissing most of my claims.

**I. INTRODUCTION AND PROCEDURAL BACKGROUND**

This Court has jurisdiction to reconsider Judge Babcock's dismissal order because one claim—the Fourth Amendment claim against Defendant Connor and the Town of Bennett regarding the May 9, 2022 incident—remains pending. The order dismissed without prejudice several other claims that are integrally related to the same pattern of alleged misconduct by government officials in the Town of Bennett and Adams County. This motion identifies two independent grounds compelling reconsideration: (1) Judge Babcock's failure to apply the mandatory liberal construction standard for pro se pleadings, and (2)

clear legal error in applying the Rooker-Feldman doctrine and res judicata to bar claims involving independent constitutional violations.

## II. LEGAL STANDARD FOR RECONSIDERATION

Under Federal Rule of Civil Procedure 54(b), "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).

The Tenth Circuit recognizes three grounds for reconsideration under Rule 54(b): "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000). District courts have "substantial discretion" to reconsider interlocutory orders. Rimbert v. Eli Lilly & Co., 647 F.3d 1247, 1251 (10th Cir. 2011). This discretion is particularly important when "a court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." Servants of Paraclete, 204 F.3d at 1012.

## III. JUDGE BABCOCK COMMITTED CLEAR ERROR BY FAILING TO APPLY THE MANDATORY LIBERAL CONSTRUCTION STANDARD FOR PRO SE PLEADINGS

The Supreme Court has established that pro se complaints must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-21

(1972). This principle has been consistently reaffirmed. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (reiterating that pro se pleadings must be "liberally construed"). This standard is mandatory, not discretionary.

The Tenth Circuit has emphasized that district courts "must construe a pro se appellant's complaint liberally." Kay v. Bemis, 500 F.3d 1214, 1218 (10th Cir. 2007) (emphasis added); see also Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating courts must construe pro se pleadings liberally, even when "untrained in the law"). The application of this standard requires courts to look beyond mere technical deficiencies and "make reasonable allowances for the pro se plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." Smith v. United States, 561 F.3d 1090, 1096 (10th Cir. 2009) (internal quotation marks omitted).

Judge Babcock's dismissal order makes no reference to this mandatory liberal construction standard. Instead, the order dismisses multiple claims for "failure to comply with Fed. R. Civ. P. 8(a)" and for being "too vague and conclusory," applying the same strict pleading standards that would be applied to a litigant represented by counsel. This constitutes clear error. See Northington v. Jackson, 973 F.2d 1518, 1521 (10th Cir. 1992) (reversing dismissal where district court failed to liberally construe pro se complaint).

When properly construed under the mandated liberal standard, my Second Amended Complaint contains sufficient factual allegations to state plausible claims for relief, as detailed in the following sections of this motion.

## IV. THE ROOKER-FELDMAN DOCTRINE WAS MISAPPLIED TO INDEPENDENT CONSTITUTIONAL VIOLATIONS

Judge Babcock incorrectly applied the Rooker-Feldman doctrine to dismiss my claims related to the eviction executed on June 5, 2023. This application constitutes clear legal error under binding Supreme Court and Tenth Circuit precedent.

### A. The Narrow Scope of Rooker-Feldman Following Exxon Mobil

The Supreme Court has explicitly narrowed the Rooker-Feldman doctrine, emphasizing that it is "confined to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005) (emphasis added). The Court further clarified that "Rooker-Feldman does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions." Id. at 284.

Following Exxon Mobil, the Tenth Circuit has consistently emphasized the doctrine's "narrow scope," applying it only when a federal plaintiff "seeks to set aside a state court judgment based on an allegedly erroneous decision by a state court." Campbell v. City of Spencer, 682 F.3d 1278, 1283 (10th Cir. 2012). Critically, "Rooker-Feldman does not bar claims that a defendant has acted unlawfully because of his 'misapprehension of' or failure 'to comply with' a prior state court judgment." Id. at 1283 (quoting Bolden v. City of Topeka, 441 F.3d 1129, 1139, 1145 (10th Cir. 2006)).

**B. My Claims Are Based on Independent Constitutional Violations During Execution**

My Second Amended Complaint does not challenge the state court eviction judgment itself, but instead alleges independent constitutional violations that occurred during its execution:

1. I specifically allege that the writ of restitution used to execute the eviction lacked legally required signatures under C.R.S. § 13-40-115(1)(d), rendering it facially invalid [ECF No. 21, ¶¶ 74-76].

2. I allege that I informed Deputy Maez of the writ's invalidity but he proceeded with the eviction anyway [ECF No. 21, ¶¶ 77-80].

3. I allege that Adams County deputies took my original copy of the unsigned writ during the eviction [ECF No. 21, ¶ 77].

4. I allege that court records were subsequently altered or substituted after the eviction to conceal the writ's invalidity [ECF No. 21, ¶¶ 86-89; Exhibits XVII-XXIV].

These allegations do not seek to "overturn" or "undo" the state court judgment, but rather seek damages for independent constitutional violations during its execution. As the Supreme Court held in Soldal v. Cook County, 506 U.S. 56, 61-62 (1992), law enforcement officers who carry out an eviction in an unlawful manner can be liable under § 1983 even when the underlying eviction judgment itself is valid.

The Tenth Circuit has directly addressed similar scenarios, holding that "a claim that government officials executed a judgment in a manner that violated federal law is not the

sort of attack on the underlying judgment that is barred by Rooker-Feldman." PJ ex rel. Jensen v. Wagner, 603 F.3d 1182, 1194 (10th Cir. 2010). Even more directly applicable, in Mayotte v. U.S. Bank Nat'l Ass'n, 484 F. App'x 296, 298-99 (10th Cir. 2012), the Tenth Circuit specifically held that Rooker-Feldman did not bar claims that "government officials enforcing [a] judgment violated [plaintiff's] rights during the eviction" because such claims "do not attack the state court judgment itself."

Judge Babcock's application of Rooker-Feldman to bar these claims directly contradicts this binding precedent and constitutes clear legal error warranting reconsideration.

**C. Rooker-Feldman Presupposes the Existence of a Valid State Court Judgment**

The most fundamental defect in Judge Babcock's Rooker-Feldman analysis is the presumption that there existed a valid state court judgment authorizing the eviction. The Supreme Court has explicitly limited Rooker-Feldman to "cases brought by state-court losers complaining of injuries caused by state-court judgments." Exxon Mobil Corp., 544 U.S. at 284 (emphasis added). This presupposes the existence of a properly rendered judgment that could serve as the cause of the plaintiff's injuries.

My Second Amended Complaint unequivocally alleges—and provides forensic evidence demonstrating—that the purported writ of restitution was facially invalid, lacking the legally required signatures and court seal mandated by Colorado law. [ECF No. 21, ¶¶ 74-76, Exhibits XVII-XXIV]. To this day, no properly executed writ of restitution exists in the court record. The judicial notice section of my Second Amended Complaint [ECF No. 21, ¶¶ 6-17] explicitly demonstrates through forensic analysis that:

1. The digital writ file is a computer-generated document incapable of bearing the physical "wet ink" signature required by C.R.S. § 13-40-115(1)(d);

2. The document violates Colorado's Uniform Electronic Transactions Act (UETA), which explicitly excludes eviction notices from permissible electronic transactions (C.R.S. § 24-71.3-103(3)(B)(II));

3. The original writ presented during eviction lacked both proper signatures and the court seal, rendering it facially void ab initio.

Where, as here, there was never a valid writ of restitution issued by the state court, the injuries alleged cannot possibly have been "caused by [a] state-court judgment[]." Exxon Mobil, 544 U.S. at 284. Rather, the injuries stemmed exclusively from Defendants' ultra vires enforcement of a fraudulent document that lacked legal force. As the Tenth Circuit has recognized, "if a government official enforces a maliciously or corruptly obtained judgment in a manner that violates federal law, the independent violation of federal rights may be vindicated in federal court." PJ ex rel. Jensen, 603 F.3d at 1194.

The absence of a valid writ of restitution is not merely a procedural irregularity—it is a jurisdictional defect that rendered the entire eviction process void from inception. See Lincoln Joint Stock Land Bank v. Barnes, 143 Neb. 58, 8 N.W.2d 545, 559 (1943) (execution unsupported by valid judgment "is not voidable merely, but absolutely void"); 33 C.J.S. Executions § 147 (sheriff who executes facially void writ "will be held liable for trespass"). My claims arise not from a state court judgment, but from Defendants' knowing

enforcement of a fraudulent document in direct contravention of statutory requirements and fundamental due process.

**V. RES JUDICATA WAS INCORRECTLY APPLIED TO JANEWAY LAW FIRM CLAIMS**

Judge Babcock also erred in applying res judicata to dismiss claims against Janeway Law Firm. Under Tenth Circuit precedent, res judicata applies only when: "(1) the prior suit ended with a judgment on the merits; (2) the parties must be identical or in privity; (3) the suit must be based on the same cause of action; and (4) the plaintiff must have had a full and fair opportunity to litigate the claim in the prior suit." Plotner v. AT&T Corp., 224 F.3d 1161, 1168 (10th Cir. 2000).

My claims against Janeway Law Firm fail multiple elements of this test:

**A. Temporal Impossibility - Claims Based on Subsequent Conduct**

Most critically, my current claims against Janeway Law Firm involve conduct that occurred after I filed my previous federal case. The previous case (see 1:22-cv-02242-CNS-NRN Witt v. State of Colorado et al ) was filed on January 10, 2023. The allegations regarding the use of an invalid writ of restitution concern events that occurred on June 5, 2023, nearly six months later.

The Tenth Circuit has explicitly held that "claims based on conduct that occurred after the filing of the first suit are not barred by res judicata regardless of whether they involve the same type of conduct as alleged in the first suit." Hatch v. Boulder Town Council, 471 F.3d

1142, 1149 (10th Cir. 2006) (emphasis added). This rule applies even when the later-occurring conduct is "of the same nature" as the conduct alleged in the first suit. Id. at 1150.

## B. No Judgment on the Merits

My prior federal case was dismissed for allegedly "frivolous filings" without consideration of the merits. The Tenth Circuit has explicitly held that "dismissal for frivolousness... is not a dismissal on the merits for res judicata purposes." Smith v. Veterans Admin., 636 F.3d 1306, 1313 (10th Cir. 2011). The prior dismissal therefore cannot satisfy the "judgment on the merits" requirement of res judicata.

## C. No Full and Fair Opportunity to Litigate

I did not have a "full and fair opportunity" to litigate these claims in the prior suit because:

- The evidence of the allegedly fraudulent writ was not available during the previous litigation
- My previous case never reached the discovery phase
- The claims involve conduct that had not yet occurred when the previous suit was filed

Judge Babcock's misapplication of res judicata to bar these claims constitutes clear error warranting reconsideration under Rule 54(b).

## VI. THE SECOND AMENDED COMPLAINT CONTAINS DETAILED FACTUAL ALLEGATIONS SUPPORTING FIRST AMENDMENT RETALIATION CLAIMS

The Second Amended Complaint contains specific, non-conclusory factual allegations supporting a plausible First Amendment retaliation claim that should not have been dismissed.

To state a First Amendment retaliation claim, a plaintiff must allege: (1) engagement in constitutionally protected activity; (2) the defendant's actions caused an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendant's adverse action was substantially motivated by the protected activity. Worrell v. Henry, 219 F.3d 1197, 1212 (10th Cir. 2000).

My Second Amended Complaint alleges a specific chronological pattern of escalating adverse actions following my protected legal activities:

1. I filed lawsuits against Judge Shawn Day and Prosecutor Joseph Lico, constituting protected First Amendment activity [ECF No. 21, ¶¶ 45-48].

2. Following this protected activity, I faced armed sheriff's deputies and intimidation at a court hearing on December 21, 2022 [ECF No. 21, ¶¶ 33-40].

3. Deputy Runge explicitly acknowledged on body camera that he was aware of my federal lawsuits during transport when arresting me [ECF No. 21, ¶¶ 38-39, 61-67].

4. I experienced a pattern of increasingly severe adverse actions, including water service termination, arrest, and ultimately eviction [ECF No. 21, ¶¶ 44-47, 60-67, 68-90].

The Tenth Circuit has recognized that evidence of knowledge of protected activity combined with temporal proximity is sufficient to establish a plausible retaliation claim. See Mata v. Anderson, 635 F.3d 1250, 1253 (10th Cir. 2011) (finding evidence of retaliatory motive where "defendants knew about plaintiff's protected activity" and took adverse action "in close temporal proximity"). The allegations in my complaint, particularly regarding Deputy Runge's explicit acknowledgment of my lawsuits, provide more direct evidence of retaliatory motive than what the Tenth Circuit has found sufficient in previous cases.

When properly construed under the mandated liberal standard for pro se pleadings, these allegations state a plausible First Amendment retaliation claim that should not have been dismissed.

## VII. THE SECOND AMENDED COMPLAINT CONTAINS DETAILED FACTUAL ALLEGATIONS SUPPORTING DUE PROCESS CLAIMS

### A. Water Utility Due Process Claim

My Second Amended Complaint contains specific, non-conclusory factual allegations regarding due process violations related to water service termination:

1. I allege that the Town of Bennett terminated my water service for 6 days after I had paid my bill in full, violating Colorado regulation 4 CCR 723-5, 5409, which requires restoration within 24 hours [ECF No. 21, ¶¶ 44-45; Exhibit V].

2. I allege that the Town later sent a fraudulent utility bill with an incorrect due date and then terminated service before the stated due date [ECF No. 21, ¶¶ 44-45; Exhibits X and XI].

Courts have recognized that water service is a property interest protected by due process. See Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 18 (1978) (utility services are property interests requiring due process protection before termination); Mansfield Apartment Owners Ass'n v. City of Mansfield, 988 F.2d 1469, 1474 (6th Cir. 1993) (recognizing water service as a protected property interest).

These specific factual allegations establish both a constitutionally protected interest and the procedural deprivation that Judge Babcock found lacking. When properly construed under the mandated liberal standard for pro se pleadings, these allegations state a plausible due process claim that should not have been dismissed.

**B. Procedural Due Process - Municipal Code Violations**

My Second Amended Complaint contains specific factual allegations regarding due process violations in the municipal code enforcement:

1. I allege that the Town relied on an inapplicable provision (BMC Sec. 16-6-390) for service by mail, which was intended exclusively for "Land Use and Development" applications, not municipal code violations [ECF No. 21, pp. 40-41].

2. I allege that Colorado Rules of Civil Procedure require a judge's order for alternative service methods, which was never obtained [ECF No. 21, p. 14].

3. I provided documentary evidence (Exhibits II, III, and XVI) showing the summonses were returned unopened.

4. I allege that these improper service procedures led directly to my arrest and detention without adequate notice or opportunity to be heard [ECF No. 21, ¶¶ 41-43, 60-67].

The Supreme Court has recognized that "freedom from bodily restraint" constitutes a fundamental liberty interest protected by due process. Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 18 (1979). The Tenth Circuit has similarly held that "an individual has a liberty interest in being free from incarceration absent a criminal conviction." Gee v. Pacheco, 627 F.3d 1178, 1185 (10th Cir. 2010) (internal quotation marks omitted).

When properly construed under the mandated liberal standard for pro se pleadings, these allegations state a plausible due process claim that should not have been dismissed.

## VIII. THE MUNICIPAL LIABILITY CLAIMS ARE SUPPORTED BY SPECIFIC FACTUAL ALLEGATIONS

My Second Amended Complaint contains specific factual allegations that, when liberally construed, state a plausible claim for municipal liability under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).

To establish municipal liability, a plaintiff must show: (1) the existence of a municipal policy or custom; and (2) a direct causal link between the policy or custom and the constitutional

injury. Id. at 694. A policy or custom can be established by showing: (1) a formal regulation or policy; (2) an informal custom amounting to a widespread practice; (3) decisions of employees with final policymaking authority; (4) ratification by final policymakers; or (5) failure to adequately train or supervise employees. Bryson v. City of Oklahoma City, 627 F.3d 784, 788 (10th Cir. 2010).

My Second Amended Complaint alleges:

1. A systematic misapplication of municipal code provisions for service of process, indicating a policy or practice [ECF No. 21, pp. 40-41].

2. Structural deficiencies in providing prompt probable cause hearings due to the jurisdictional relationship between Adams County and the Town of Bennett [ECF No. 21, pp. 46-48].

3. Multiple instances of coordination between different municipal departments (Fire, Sheriff, Court) suggesting a custom of retaliation [ECF No. 21, ¶¶ 38-40, 61-67, 68-90].

4. Pattern of constitutional violations sufficient to establish municipal policy [ECF No. 21, ¶¶ 91-98].

The Tenth Circuit has held that municipal liability can be established by showing "a practice so persistent and widespread as to practically have the force of law." Schneider v. City of Grand Junction Police Dep't, 717 F.3d 760, 770 (10th Cir. 2013). My allegations regarding

repeated constitutional violations across multiple agencies and departments meet this standard when liberally construed.

Judge Babcock's dismissal of these claims as "vague and conclusory" without applying the mandated liberal construction standard constitutes clear error warranting reconsideration.

## IX. CONCLUSION AND REQUESTED RELIEF

For the foregoing reasons, I respectfully request that this Court:

1. VACATE Judge Babcock's Order [ECF No. 36] dismissing my claims and REINSTATE ALL claims in my Second Amended Complaint;

2. ALTERNATIVELY, PERMIT me to file an amended complaint addressing any perceived deficiencies identified by the Court;

3. ALTERNATIVELY, ORDER limited discovery on the relationship between the Town of Bennett, Adams County Sheriff's Office, and the circumstances surrounding the alleged constitutional violations;

4. SET a status conference to establish a discovery schedule; and

GRANT any other relief the Court deems just and proper.

Respectfully submitted,

Eric Witt
s/ Eric Witt
22204 E Belleview Pl
Aurora, CO 80015
Tel: (720) 791-9889
Email: ericwitt34@gmail.com
Pro Se Plaintiff
Dated: Monday, April 21, 2025

CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2025, I electronically filed the foregoing EMERGENCY MOTION FOR RECONSIDERATION UNDER RULE 54(b): CONCLUSIVE PROOF OF SYSTEMATIC EVIDENCE MANIPULATION AND MANIFEST INJUSTICE with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Nicholas C. Poppe
NATHAN DUMM & MAYER P.C.
7900 E. Union Avenue, Suite 600
Denver, CO 80237-2776
Attorney for Town of Bennett

Peter C. Middleton
Jordan M. Brickman
HALL & EVANS LLC
1001 17th Street, Suite 300
Denver, CO 80202
Attorneys for Defendant Caleb J. Connor

Eric Witt
s/ Eric Witt
Dated: Monday, April 21, 2025