IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01550-CNS-NRN

ERIC WITT,

Plaintiff,

v.

TOWN OF BENNETT, and
CALEB J. CONNOR,

Defendants.

---

**REPORT AND RECOMMENDATION ON DEFENDANTS TOWN OF BENNETT AND CALEB J. CONNOR'S MOTIONS TO DISMISS (ECF Nos. 43 & 47)**

---

**N. REID NEUREITER**
**United States Magistrate Judge**

This case is before the Court pursuant to the Orders issued by Judge Charlotte N. Sweeney, ECF Nos. 45 & 48, referring Defendant Town of Bennett's Motion to Dismiss, ECF No. 43, and Defendant Caleb J. Connor's[1] Motion to Dismiss, ECF No. 47. Plaintiff Eric Witt opposed both motions in a single response, ECF No. 41, and Defendants each filed a reply, ECF Nos. 54 & 56. The Court conducted a motion hearing on April 3, 2025. ECF No. 57. The Court has taken judicial notice of the case file and considered the applicable federal and state statutes and case law.

In sum, this is a case of a man who is suing a fire-marshal, fire department, and town because the fire marshal allegedly trespassed on his property to save his dog from

---

[1] The Clerk of Court is respectfully directed to correct the spelling of this defendant's last name on the docket from "Conner" to "Connor." See ECF No. 47 at 2.

being attacked by other dogs. The Court ultimately concludes Plaintiff fails to make out a viable claim of any kind. As set forth below, the Court **RECOMMENDS** that the Motions to Dismiss, ECF Nos. 43 & 47, be **GRANTED**.

I. **FACTUAL AND PROCEDURAL BACKGROUND**[2]

Currently pending before the Court is one Fourth Amendment search and seizure claim against the Town of Bennett and Connor, the Battalion Chief and Fire Marshal of Bennett-Watkins Fire Rescue, stemming from an incident that occurred on May 9, 2022. *See* ECF No. 36 at 12 (order dismissing all other claims related to other incidents and other former defendants). Connor is sued in his individual and official capacities. ECF No. 21 at 4. Both the Town of Bennett and Connor move to dismiss this claim.

The SAC contains limited allegations regarding the events in question. On May 9, 2022, Connor responded to reports that a dog was being attacked by other dogs in the yard of Plaintiff's Bennett, Colorado home. ECF No. 21 at 13. The SAC refers to the attack as "an unverified attack by [Plaintiff's] puppies." *Id.* Plaintiff's yard was enclosed by a fence. *Id.* Connor "dismantle[ed]" the fence, entered Plaintiff's yard, and removed Plaintiff's dog from the residence. *Id.* Connor did not have a warrant to enter Plaintiff's property. *Id.* at 33. Plaintiff was "[d]enied immediate reunion" with his dog, and found her "in distress" the next day at Adams County Animal Shelter. *Id.* at 13. Someone assured Plaintiff that the dog was fine, and Plaintiff at some point refused to euthanize

---

[2] Unless otherwise noted, all factual allegations are taken from Plaintiff's Second Amended Complaint ("SAC"), ECF No. 21, and are presumed to be true for the purposes of the Motions to Dismiss. Any citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

the dog, who later underwent $5,000 in medical treatment. *Id.* The SAC alleges that Connor had been "acting under the authority of the Town of Bennett."

The SAC references an email exchange between Connor and Plaintiff on June 3, 2022. *See* ECF No. 1-1.[3] This email describes the May 9, 2022 events from Connor's perspective. Connor wrote that he had been in Plaintiff's neighborhood conducting a fire inspection when he was "flagged down [by] an adult male" who "was panicked [and] stated that two dogs were attacking another dog" near the intersection where Plaintiff's home was located. ECF No. 1-1 at 1. The man reportedly "feared that the dogs would kill the dog being attacked." *Id.* Connor stated that he then "notified our fire dispatch center via radio and asked for law enforcement to respond." *Id.* Connor then traveled to the area, where some children told Connor that dogs were fighting in Plaintiff's yard, the fighting was severe, they feared a dog would be killed, and they feared for their safety because the dogs might push through the fence. *Id.* Through the fence, Connor observed a bleeding and injured dog being cornered by two other dogs who were "growling, barking, and exhibiting aggressive behavior." *Id.* An Adams County Sheriff's Deputy arrived at the scene. *Id.* "Several attempts were made at the front door and windows to determine if anyone was home," but there was no response. *Id.* The deputy then "determined that an exigent circumstance existed in which the dog needed to be removed from the situation to prevent further harm or death." *Id.* Connor and the deputy

---

[3] In ruling on a motion to dismiss, the Court may consider the contents of the operative complaint and "may also consider documents that a plaintiff (1) attaches to her complaint; (2) incorporates by reference in her complaint; or (3) refers to in her complaint and that are central to her complaint and indisputably authentic". *See Cuervo v. Sorenson*, 112 F.4th 1307, 1312 (10th Cir. 2024). The Court here considers the June 3, 2022 email because it is incorporated by reference in the SAC. *See* ECF No. 21-6 at 2.

then removed "two fence slats near the injured dog to remove it and render aid." *Id.* At that time, the injured dog "had visible injuries and significant bleeding." *Id.* at 2. Animal control subsequently arrived and "took custody of the dog to take it to receive medical care." *Id.* Connor summarized that "the dog appeared to be seriously injured and in my opinion needed to be removed from the situation to prevent death or further harm." *Id.*

Connor wrote that "[b]eyond this information you would need to request further information from the Adams County Communications Center, Adams County Sherriff's Department, and Adams County Animal Control. I cannot speak to any specifics on the care your dog would have received after the incident while in custody of animal control." *Id.* Connor provided the contact information for the Adams County Sherriff's Department and Adams County Animal Control. *Id.*

The SAC does not contest the accuracy of any of the statements made in Connor's June 3, 2022 email, but states that the email "further exacerbates the apparent lack of transparency and accountability regarding the incident involving the plaintiff's dog." ECF No. 21-6 at 2.

## II. STANDARD FOR DISMISSAL

Rule 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted). "A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are

4

true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679–81. Second, the court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679.

III. **CONNOR'S MOTION TO DISMISS (ECF No. 47)**

   a. **Individual Capacity Claim**

   The Fourth Amendment of the United States Constitution provides:

   The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. "The 'basic purpose of this Amendment' is to 'safeguard the privacy and security of individuals against arbitrary invasions by government officials.'" *United States v. Vallejos*, No. 24-2065, 2025 WL 1950187, at *3 (10th Cir. July 16, 2025). "'[S]earches conducted outside the judicial process, without prior approval by

judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *Id.* (quoting *Arizona v. Gant*, 556 U.S. 332, 338 (2009)).

"One such exception is exigent circumstances, namely, when 'the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment,' such as 'the need to assist persons who are seriously injured or threatened with such injury.'" *Luethje v. Kyle*, 131 F.4th 1179, 1190 (10th Cir. 2025) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). "The existence of exigent circumstances is a mixed question of law and fact," and should be evaluated on a case-by-case basis. *United States v. Anderson*, 981 F.2d 1560, 1567 (10th Cir. 1992). "[A] warrantless search is excused by exigent circumstances where '(1) the officers have an objectively reasonable basis to believe there is an immediate need to protect the lives or safety of themselves or others, and (2) the manner and scope of the search is reasonable.'" *Id.* (quoting *United States v. Najar*, 451 F.3d 710, 718 (10th Cir. 2006)). "It is the government's burden to demonstrate exigent circumstances to justify a warrantless entry, including in qualified immunity cases." *Id.*

The Tenth Circuit has held that "[t]he exigent standard test applies to situations involving mistreatment of animals. Cruelty to animals is a statutory offense. It is therefore state policy to render aid to relatively vulnerable and helpless animals when faced with people willing or even anxious to mistreat them." *Dicesare v. Stout*, 992 F.2d 1222 (10th Cir. 1993).

Connor argues that Plaintiff has failed to plead a Fourth Amendment claim against him in his individual capacity because the "search" in this case was proper under exigent circumstances. ECF No. 47 at 4-7. In response, Plaintiff argues that it is disputed whether an emergency situation regarding the dogs in the back yard existed. ECF No. 51 at 5-6. In particular, Plaintiff argues that there was no "emergency requiring immediate entry" because (1) Connor had time to call for law enforcement, (2) Connor has not provided documentation of the witnesses' statements, (3) the dog still appeared injured the next day and appeared to have "received minimal medical care despite these supposedly urgent injuries," and (4) Plaintiff suspects that radio transcripts of Connor's communications on May 9, 2022 would contradict his "after-the-fact characterization of events." ECF No. 51 at 5-6. Overall, Plaintiff argues that Connor's argument for dismissal hinges on factual disputes and therefore should be denied.

Reading the SAC in a light most favorable to Plaintiff, the Court finds that the following facts are alleged. Connor reported that on May 9, 2022, he received multiple reports of a dog fight and observed a severely injured dog in Plaintiff's back yard. Plaintiff was not home, and Connor removed a dog from the yard. The dog was transported to Adams County Animal Shelter. The next day, Plaintiff observed that his dog was severely injured—so injured that Plaintiff paid $5,000 in medical costs for the dog's care. Plaintiff does not allege that the fight did not occur or that Connor's report was fabricated in any way, nor does he allege any other cause of the dog's injuries.

The Court finds that facts as alleged in the SAC indicate that exigent circumstances existed on May 9, 2022 which justified Connor's limited entry into Plaintiff's yard to retrieve a severely injured dog. Accordingly, the Fourth Amendment

7

claim against Connor in his individual capacity should be dismissed. The Court is guided by two cases analyzing motions to dismiss Fourth Amendment claims in the child abuse context. In *Miller v. IPRA Custodian*, No. 1:21-CV-00473-JB-LF, 2022 WL 525824, at *6 (D.N.M. Feb. 22, 2022), *report and recommendation adopted*, 2022 WL 951404 (D.N.M. Mar. 29, 2022), the court considered a Fourth Amendment claim brought against a police officer where the complaint alleged that the police received an anonymous tip that plaintiffs were not providing their children with adequate food and were abusing drugs. *Id.* at *3. Based on this allegation, a state social worker attempted to do a welfare check at the plaintiffs' home, but the plaintiffs refused to allow the social worker to check the children. *Id.* The defendant police officer then arrived and ultimately entered the home to do a welfare check over the plaintiffs' objection. *Id.* The court ultimately held that "the facts plaintiffs allege[d] in their complaint show[ed] exigent circumstances" and, in response to the motion to dismiss, plaintiffs "failed to explain how these facts do not show exigent circumstances." *Id.* at *6.

In contrast, in *Burgess v. Houseman*, 268 F. App'x 780 (10th Cir. 2008), a mother brought a Fourth Amendment claim against a state social worker who took the mother's minor child, H.M.T., from school into overnight protective custody after H.M.T.'s father's ex-wife's child stated in a separate investigation that the father had abused H.M.T. *Id.* at 782. While the defendant social worker argued that the claim should be dismissed because of the exigent circumstances exception, the Tenth Circuit held that that the mother adequately pled a Fourth Amendment violation because the complaint did not contain any child abuse allegations, no charges were ever filed against the mother, and

the complaint alleges that there was no reason to believe H.M.T. would not have been safe in the custody of her mother. *Id.* at 783.

The constellation of facts presented in the SAC here are similar to *Miller* and dissimilar to *Burgess*. Unlike in *Burgess*, the SAC itself alleges the existence of exigent circumstances, and provides no other allegations that could plausibly contradict the existence of exigent circumstances. Plaintiff has alleged that Connor "cit[ed] an unverified attack by [Plaintiff's] puppies" as the reason for removing the injured dog, but offers no other reason for Connor's entry to the property. Plaintiff alleges that he observed the dog severely injured the next day at Adams County Animal Shelter, and does not allege that anything else besides a dog attack caused the dog's injuries. Additionally, while Plaintiff alleges in the SAC that Connor's June 3, 2022 email shows a "lack of transparency and accountability" regarding the May 9, 2022 events, he does not allege that any part of Connor's recounting of the events was fabricated. Because Plaintiff has alleged that Connor entered Plaintiff's yard under exigent circumstances, Plaintiff's Fourth Amendment claim against Connor in his individual capacity should be dismissed.

### b. Qualified Immunity

Connor relatedly argues that he is entitled to qualified immunity. The Court agrees. The doctrine of qualified immunity protects government officials from individual liability in the course of performing their duties so long as their conduct does not violate clearly established constitutional or statutory right*s. Washington v. Unified Gov' t of Wyandotte Cnty.*, 847 F.3d 1192, 1197 (10th Cir. 2017). Once a defendant has asserted a defense of qualified immunity, the burden shifts to the plaintiff who must establish that

(1) the defendant violated a right, and (2) the right was clearly established. *Puller v. Baca*, 781 F.3d 1190, 1196 (10th Cir. 2015). "In their discretion, courts are free to decide which prong to address first in light of the circumstances of the particular case at hand." *Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010) (quotation omitted).

The Court has determined that the SAC fails to plead that Connor violated Plaintiff's Fourth Amendment rights, and consequently, the first prong is not met. Accordingly, Connor is entitled to qualified immunity. Additionally, Plaintiff has not provided authority showing that it should have been clear to Connor that he was not entitled to retrieve the injured dog from the yard based on exigent circumstances. *C.f. Miller*, 2022 WL 525824, at *6 (holding that the plaintiffs "failed to allege that [defendant police officer] violated clearly established law and have failed to provide authority that it would have been clear to [the officer] that he was not entitled to perform a welfare check based on exigent circumstances").

### c. Official Capacity Claim

Connor argues that the Fourth Amendment claim against him in his official capacity as Battalion Chief and Fire Marshal of Bennett-Watkins Fire Rescue must be dismissed. This official capacity claim is the equivalent of a claim against Bennett-Watkins Fire Rescue.[4] Connor argues that Bennett-Watkins Fire Rescue cannot be held

---

[4] *See Stuart v. Jackson*, 24 F. App'x. 943, 956 (10th Cir. 2001) ("[A] section 1983 suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same.") (citation omitted). Under *Monell*, "municipalities and other local government units," including fire departments, are considered persons to whom Section 1983 applies. *Monell v. Dep't of Social Servs. of New York*, 436 U.S. 658, 690 (1978); *see also Herrera v. Vill. of Angel Fire*, No. 1:21-CV-465-SCY-LF, 2024 WL 1093766, at *1 (D.N.M. Mar. 13, 2024) (analyzing *Monell* claim against local fire department), *appeal dismissed*, No. 24-2040, 2024 WL 5480546 (10th Cir. Sept. 30, 2024).

liable through respondeat superior liability alone, and Plaintiff has not alleged that there was any inadequate training, custom, or policy promulgated by Bennett-Watkins Fire Rescue. Connor further argues that because there is no underlying constitutional violation by an officer, there cannot lie *Monell* liability of the municipal entity.

"Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690 (footnote omitted). To state a claim for municipal liability, a plaintiff must plausibly allege the existence of a municipal policy or custom and a causal link between the policy or custom and the injury alleged. *See Mocek v. City of Albuquerque*, 813 F.3d 912, 933 (10th Cir. 2015). He must also "show that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013). A municipality can be liable under Section 1983 only where the municipality itself causes the constitutional violation at issue. *Monell*, 436 U.S. at 690–91. Thus, to prove a municipality is liable under Section 1983 for the acts of one of its employees, a plaintiff must show (1) that a municipal employee committed a constitutional violation and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation. *Jiron v. City of Lakewood,* 392 F.3d 410, 419 (10th Cir. 2004).

An official policy or custom may take one of the following five forms:

(1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of

11

employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quotation and alteration marks omitted). Whatever species of policy or custom is alleged,

> [t]he plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997).

Here, the SAC contains no allegations with respect to any training, custom, or policy promulgated by Bennett-Watkins Fire Rescue. Additionally, as previously discussed, the SAC does not adequately plead that Connor committed a constitutional violation. For these reasons, the Fourth Amendment claim against Connor in his official capacity as Battalion Chief and Fire Marshal of Bennett-Watkins Fire Rescue should be dismissed.

## IV. TOWN OF BENNETT'S MOTION TO DISMISS (ECF No. 43)

Plaintiff's only factual allegation regarding the Town of Bennett is that Connor was "acting under the authority of the Town of Bennett." The Town of Bennett first argues that Plaintiff has failed to plead a *Monell* claim against it because Bennett-Watkins Fire Rescue is a separate governmental entity over which the Town of Bennett has no authority. ECF No. 43 at 1–2. The Town of Bennett argues that the Court may take judicial notice of a transparency notice (an annual posting required by state statute to be filed by all special districts in Colorado) posted by the Bennett Fire Protection

12

District, which states that the Bennett Fire Protection District is managed by a five-member board of trustees. Because Plaintiff has failed to establish that the Town of Bennett has authority over Bennett-Watkins Fire Rescue, the Town of Bennett argues that Plaintiff has failed to state a claim against it. In response, Plaintiff argues that whether the Town of Bennett has authority over Bennett-Watkins Fire Rescue is a factual issue not to be resolved on a motion to dismiss and that municipalities may under some circumstances be liable for the actions of entities performing municipal functions. ECF No. 51 at 3-5.

The Town of Bennett's first argument for dismissal hinges upon the Court's ability to take judicial notice of the contents of the Bennett Fire Protection District website. But this website does not speak to the relationship between the Town of Bennett and Bennett-Watkins Fire Rescue. Accordingly, it is not dispositive of Plaintiff's claim.

The Town of Bennett additionally argues that, regardless of the relationship between the Town of Bennett and Bennett-Watkins Fire Rescue, Plaintiff's claim should be dismissed because the SAC fails to plead municipal liability under *Monell*, and municipalities cannot be sued solely under a theory of respondeat superior liability. In response, Plaintiff argues that the SAC adequately alleges a custom or practice of the Town of Bennett disregarding constitutional rights. *Id.*

The Court finds that just as the SAC fails to plead a *Monell* claim against Bennett-Watkins Fire Rescue, so too does it fail to plead such a claim against the Town of Bennett. It is not alleged that the Town of Bennett has undertaken any policy or custom that is connected in any way with the events of May 9, 2022. Additionally, the claim against the Town of Bennett must fail because Plaintiff has not adequately pled an

underlying constitutional violation. Accordingly, Plaintiff's Fourth Amendment claim against the Town of Bennett should be dismissed.

## V. CONCLUSION

For the reasons set forth above, it is hereby **RECOMMENDED** that the Motions to Dismiss, ECF Nos. 43 & 47, be **GRANTED**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge,** *Thomas v. Arn*, **474 U.S. 140, 148–53 (1985), and also waives appellate review of both factual and legal questions.** *Makin v. Colo. Dep't of Corr.*, **183 F.3d 1205, 1210 (10th Cir. 1999);** *Talley v. Hesse*, **91 F.3d 1411, 1412–13 (10th Cir. 1996).**

Dated at Denver, Colorado this 5th day of August, 2025

_____
N. Reid Neureiter
United States Magistrate Judge